## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

HABIB A. BHUTTA,

    Plaintiff,

    v.

HOWARD COUNTY
GENERAL HOSPITAL and
NATIONAL PRACTITIONER
DATA BANK,

    Defendants.

Civil Action No. 24-3211-TDC

### MEMORANDUM OPINION

Self-represented Plaintiff Dr. Habib A. Bhutta has filed this action against Defendants Howard County General Hospital ("HCGH") and the National Practitioner Data Bank ("NPDB"), an entity within the United States Department of Health and Human Services ("HHS"), based on an incident in which HCGH sent, and the NPDB added to its database, a report stating that Dr. Bhutta had allowed his privileges at HCGH to lapse while he was under investigation. In the Complaint, Dr. Bhutta alleges claims of employment discrimination by HCGH, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't § 20–606 (LexisNexis 2021); violations of the right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution; arbitrary and capricious agency action by the NPDB, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559, 701–706; and various state common law claims. HCGH has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, and the NPDB has filed a Motion to Dismiss as well as a separate Partial

Motion for Summary Judgment as to the APA claim only. Upon review of the submitted materials, the Court finds that no hearing is necessary. D. Md. Local R. 105.6. For the reasons set forth below, HCGH's Motion will be GRANTED, and the NPDB's two Motions will be GRANTED.

## BACKGROUND

Dr. Habib A. Bhutta is a surgeon who has practiced medicine for more than 40 years. He held medical staff membership and clinical privileges at HCGH until May 1, 2020. Until late 2019, he "received routine annual reappointment letters from [the] HCGH Board of Trustees in accordance with the hospital's rules and bylaws." Compl. ¶ 8, ECF No. 1.

## I.   HCQIA

Dr. Bhutta's claims, which center on HCGH's transmittal of an adverse action report to the NPDB and the NPDB's subsequent retention of that report, implicate the provisions of the Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. §§ 11101–11152, which requires any "health care entity" that "takes a professional review action that adversely affects the clinical privileges of a physician for a period longer than 30 days" or that "accepts the surrender of clinical privileges of a physician," either "while the physician is under an investigation by the entity relating to possible incompetence or improper professional conduct" or "in return for not conducting such an investigation or proceeding," to report the physician's name and "a description of the acts or omissions or other reasons for the action or, if known, for the surrender" to the Secretary of Health and Human Services ("the Secretary"). 42 U.S.C. § 11133(a). The HCQIA grants to the Secretary the powers to prescribe the "form and manner" in which such information is reported and to designate an "appropriate private or public agency" to maintain reports on the Secretary's behalf. 42 U.S.C. § 11134(a)–(b). Pursuant to this authority, the Secretary established the NPDB "to collect and release certain information relating to the professional competence and

2

conduct of physicians." 45 C.F.R. § 60.1; *see* 45 C.F.R. § 60.12(a)(1) (requiring that health care entities report adverse actions to the NPDB). As relevant here, "health care entity" is defined as a "hospital" or any "entity that provides health care services" that "engages in professional review activity through a formal peer review process for the purpose of furthering quality health care, or a committee of that entity." 45 C.F.R. § 60.3.

The HCQIA grants to the Secretary the power, "by regulation," to "provide for . . . disclosure of the information, upon request, to the physician or practitioner" and for "procedures in the case of disputed accuracy of the information." 42 U.S.C. § 11136. Pursuant to this authority, the Secretary established procedures for the subjects of adverse action reports to dispute such reports, pursuant to which the subject of a report may request a review of the report for accuracy, but the "Secretary will only review the accuracy of the reported information, and will not consider the merits or appropriateness of the action or the due process that the subject received." 45 C.F.R. § 60.21(c)(1). The regulations also state that, when reviewing a disputed report, the Secretary may determine whether "the information is accurate and reportable to the NPDB," whether "the information contained in the report is inaccurate," whether "the disputed issues are outside the scope of . . . review," and whether "the adverse action was not reportable and therefore should be removed from the NPDB." 45 C.F.R. § 60.21(c)(2). In turn, such determinations must be reported to the subject and the NPDB, and, if warranted, revisions to or voiding of the report will follow. *See id.* Beyond the regulations, the NPDB has published a Guidebook interpreting the HCQIA and its implementing regulations in order to provide guidance to regulated entities.

## II.    Adverse Action Report

On December 11, 2019, Dr. Bhutta met with the HCGH Leadership Council to discuss concerns that had been raised about his "responsiveness while assigned to general surgery

3

emergency call" and his "communication with patients and families and possible issues with clinical care as evidenced by [his] failure to remove an infected organ during surgery." Administrative Record ("A.R.") 9, ECF No. 49. On December 19, 2019, the Leadership Council sent Dr. Bhutta a letter amending his Focused Professional Practice Evaluation ("FPPE") plan to include new conditions: he would be removed from the general surgery on-call schedule, he would be required to be observed for his next ten surgeries, and the observer would provide Dr. Bhutta and the Leadership Council with written reviews after the surgeries. The Leadership Council asked him to sign and return a copy of the letter within five days to "demonstrate your commitment to work with us and your willingness to participate in the FPPE." *Id.*

On January 10, 2020, Dr. Bhutta responded with a letter disputing the allegation about the organ removal and requesting more information so he could respond. In a January 24, 2020 letter, the Leadership Council provided additional facts relating to Dr. Bhutta's alleged deficiencies, including that he had to be reminded during the surgery that the organ, an appendix, had not yet been removed, and again asked Dr. Bhutta whether he planned "to comply with the proposed FPPE plan." A.R. 12. After Dr. Bhutta sent an email disputing the allegations, the Leadership Council responded on February 7, 2020 with a letter in which it informed Dr. Bhutta that if he did not accept the new terms in his FPPE plan, his "case will be forwarded to the [HCGH Medical Executive Committee] for consideration." A.R. 15.

On March 20, 2020, HCGH President Steven C. Snelgrove notified Dr. Bhutta that the HCGH Medical Executive Committee had recommended that Dr. Bhutta's "reappointment of medical staff membership and clinical privileges be subject to . . . restrictions and conditions." A.R. 16. These conditions included that a proctor observe and provide written feedback on all of Dr. Bhutta's surgical cases, that Dr. Bhutta notify the Chair of the Department of Surgery within

4

12 hours of any patient consultation, that the Chair review Dr. Bhutta's documentation of all surgical cases and consultations, and that Dr. Bhutta's reappointment would be for a six-month term, at the end of which his FPPE plan and proctor observations would be reviewed. Snelgrove informed Dr. Bhutta that the recommendations were "made as a result of the issues that have occurred over the past several years regarding questions and concerns about your technical competence and professionalism, including the most recent issues discussed with you through the HCGH Leadership Council." A.R. 16. Snelgrove notified Dr. Bhutta that the recommendations constituted "an adverse action" entitling Bhutta to a hearing under the HCGH bylaws, which he needed to request within 30 days or his right to a hearing and appellate review would be waived. A.R. 16. Snelgrove also stated that "HCGH will report this adverse action to the Maryland Board of Physicians and the National Practitioner Data Bank." A.R. 17. One week later, on March 27, 2020, Snelgrove notified Dr. Bhutta that the Board of Trustees had voted to reappoint him to the hospital's surgical staff for only one month, from April 1 to April 30, 2020.

In an April 6, 2020 letter, Dr. Bhutta's counsel notified Snelgrove that Dr. Bhutta's understanding was that his reappointment was "approved without the restrictions and conditions delineated" in the March 20, 2020 letter and to confirm that his reappointment was in fact for a term of one year, not one month. A.R. 70. On April 15, 2020, HCGH's counsel responded by stating that Dr. Bhutta "was reappointed for a one month term . . . to allow him the opportunity to review the Medical Executive Committee's recommended action of requiring a proctor for all surgical procedures and determine whether to accept the recommendation or request a fair hearing." A.R. 98.

Prior to April 27, 2020, Dr. Bhutta agreed to the terms of the FPPE plan, and his attorney and the HCGH discussed the possibility of a one-year reappointment. However, by April 29, 2020,

5

Dr. Bhutta had informed HCGH that he would not be seeking reappointment to the HCGH Medical Staff and would not be requesting a hearing, such that his clinical privileges and medical staff membership expired on April 30, 2020. In an email, HCGH's counsel informed Dr. Bhutta's counsel that HCGH would make the following report to the Maryland Board of Physicians and the NPDB:

> Dr. Bhutta chose not to continue his medical staff membership and clinical privileges when his reappointment term expired. A Focused Professional Practice Evaluation (FPPE) plan which include[d] a requirement for a monitor for surgical cases was recommended, but never initiated. Howard County General Hospital does not consider an FPPE to be a disciplinary action.

A.R. 75. Later that day, Dr. Bhutta's counsel sent an email stating that she had "triple check[ed]" with Dr. Bhutta, that he "will not agree to Howard County General Hospital making any report," and that she was requesting that Dr. Bhutta be allowed to "walk away and not seek reappointment" and that HCGH "make no report." A.R. 75. HCGH's counsel responded by stating that, according to Maryland regulations and the NPDB Guidebook, "we are required to report." A.R. 74.

In a May 8, 2020 letter, Snelgrove notified Dr. Bhutta that his time to request a hearing had expired, such that, pursuant to the HCGH bylaws, he had waived his right to a hearing and he would be deemed to have accepted the HCGH Medical Executive Committee's recommended amendments to the FPPE conditions of reappointment. He also stated that HCGH "will report this adverse action to the Maryland Board of Physicians and the National Practitioner Data Bank." A.R. 100.

In a May 11, 2020 email, Dr. Bhutta replied that he was "very devastated by the confusion," that he had accepted the time period for reappointment but not any restrictions on his privileges, and that he continued to dispute the allegations against him. A.R. 102. Two days later, on May 13, 2020, Dr. Bhutta sent an email to Snelgrove and HCGH's counsel stating that "I am not

6

interested to apply for reappointment and will let my privil[e]ges lapse," but that "if an automatic (without reapplying) process exist[s] I will take it." A.R. 103.

On May 18, 2020, an HCGH administrator sent to Dr. Bhutta an email stating that HCGH had been notified that he was not renewing his privileges at HCGH, and that his resignation was effective May 1, 2020. Also on May 18, 2020, the NPDB received and posted in its database an adverse action report relating to Dr. Bhutta. The report lists HCGH as the "reporting entity" and the individual who submitted the report as Christina Yuan, the Director of the HCGH Medical Staff Office. A.R. 1. The adverse action was classified as "Practitioner Allowed Privileges to Expire While Under Investigation," with an action date of May 13, 2020 and an effective date of May 1, 2020. A.R. 1–2. The description of the action and its reasons state that:

> Dr. Bhutta chose not to continue his medical staff membership and clinical privileges at Howard County General Hospital (HCGH) when his reappointment term expired. A Focused Professional Practice Evaluation Plan, which included a requirement for a proctor for all surgical cases, was recommended, but was not initiated due to his decision to allow his medical staff membership and clinical privileges to lapse. HCGH does not consider an FPPE to be a disciplinary action.

A.R. 2.

On June 11, 2020, Dr. Bhutta submitted a statement for inclusion in the report in which he stated that "all allegations leveled against me are false, and baseless" and that he "never accepted them." A.R. 6. He also attached the text of his May 11, 2020 email to Snelgrove.

**III.    Discrimination Complaint**

On August 27, 2020, approximately 100 days after HCGH submitted the adverse action report to the NPDB, Dr. Bhutta filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") in which he alleged age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, and the Howard County Code. On January 27, 2021, the EEOC transferred the complaint to the Howard County Office of Human

7

Rights and Equity ("OHRE").  On January 25, 2022, OHRE issued a Decision and Order in which it concluded that there was no reasonable cause to believe that HCGH discriminated against Dr. Bhutta because of age and notified him of his right to appeal to the Howard County Human Rights Commission ("HRC") and to request review of the OHRE or HRC decision by the EEOC.

## IV.    NPDB Dispute Resolution Process

On September 8, 2023, pursuant to regulations governing disputes over the accuracy of information in the NPDB, *see* 45 C.F.R. § 60.21, Dr. Bhutta submitted a request to the NPDB for the removal of the adverse action report from its database.  Among other arguments, he objected to "irregularities" in his peer review and "violations of bylaws" by HCGH.  A.R. 4.  Specifically, he stated that his peer review was carried out by the wrong hospital officials, that he was not given copies of the complaints against him before conditions were placed on his privileges, that the wrong hospital officials submitted the adverse action report to the NPDB, that the HCGH Board of Trustees made no mention of restrictions on his privileges when it approved his reappointment for April 2020, and that the Maryland Board of Physicians had conducted an investigation and exonerated him.

In an undated letter to Dr. Bhutta, the NPDB acknowledged receipt of his request and attached a Dispute Resolution Information Sheet stating that the dispute resolution process can determine only (1) whether the adverse action report "was submitted in accordance with NPDB reporting requirements, including the eligibility of the reporting entity to report the information"; (2) whether the report "accurately depicts the action taken as reflected in the written record provided by the reporting entity"; and (3) whether the reporting entity's "basis for the action is reflected in the written record."  A.R. 34.  The Information Sheet also stated that the NPDB "does not examine how a reporting entity uses its bylaws, how practitioners are disciplined, or how they

8

are afforded due process," nor does it examine whether a physician "was informed of an ongoing investigation" or any "civil rights issues such as discrimination." A.R. 34.

On September 22, 2023, the HHS Health Resources and Services Administration ("HRSA"), the entity within HHS to which the Secretary has delegated the authority to conduct the dispute resolution process, *see* U.S. Dep't of Health & Hum. Servs., Health Res. & Servs. Admin., NPDB Guidebook, at F-4 to F-5 (2018), requested information on Dr. Bhutta's case from HCGH, which subsequently submitted documentation of its communications with Dr. Bhutta along with a response stating why, in its view, its report was accurate and it was required to report Dr. Bhutta's actions to the NPDB. On or about November 6, 2023, in response to HCGH's materials, Dr. Bhutta submitted additional documentation and a statement in which he "stress[ed] that the Executive Committee is not authorized to send adverse action [reports]" and that doing so is the responsibility of the Board of Trustees. A.R. 118.

On February 2, 2024, HRSA issued a Dispute Resolution Decision letter in which it denied Dr. Bhutta's request to remove the adverse action report. In the letter, HRSA stated that "[t]here is no basis to conclude that the Report should not have been filed in the NPDB or that it is not accurate." A.R. 121. HRSA stated that Dr. Bhutta was reported pursuant to federal regulations requiring health care entities to report the "[a]cceptance of the surrender of clinical privileges or any restriction of such privileges by a physician . . . [w]hile the physician . . . is under investigation by the health care entity relating to possible incompetence or improper professional conduct or . . . [i]n return for not conducting such an investigation or proceeding." A.R. 125–26 (quoting 45 C.F.R. § 60.12(a)(1)(ii)). HRSA also stated that, consistent with the NPDB Guidebook, the "failure to renew clinical privileges while under or to avoid investigation must be reported." A.R. 126 (citing NPDB Guidebook at E-36). HRSA further concluded that because Dr. Bhutta was

9

under investigation by HCGH from December 2019 through May 2020, when he allowed his privileges to expire through his May 13, 2020 email "while still under an active investigation" into his "professional conduct or competency," Dr. Bhutta's actions "legally requir[ed] HCGH to submit the Report, and the Report is accurate as submitted." A.R. 126. HRSA rejected Dr. Bhutta's arguments relating to violations of HCGH's bylaws because "the NPDB does not examine how an entity uses its bylaws, how practitioners are disciplined, or how practitioners are afforded due process; all such concerns must be resolved between the subject of the report and the reporting entity." A.R. 126 (citing NPDB Guidebook at F-5).

On May 8, 2024, Dr. Bhutta requested reconsideration by HRSA because he "did not ever surrender . . . [his] privileges [while] under investigation" in that the March 27, 2020 letter from the HCGH Board of Trustees "approved [his] privileges without any restriction" and therefore "ended all investigations" into him. A.R. 130. On May 13, 2024, Dr. Bhutta submitted an additional statement reiterating that argument and asserting that his privileges "never lapsed during investigation." A.R. 2. On May 29, 2024, HRSA upheld its original decision not to remove the adverse action report based on the conclusion that the submitted materials demonstrated that his December 19, 2020 placement on the FPPE plan constituted the "initiation of a formal investigation," and Dr. Bhutta's claim that his privileges "never lapsed" was "incorrect" because his May 13, 2020 email demonstrated that he voluntarily allowed his privileges to lapse before the end of the investigation, which does not occur until "the health care entity's decision-making authority takes a final action or makes a decision to not further pursue the matter," neither of which occurred with the sending of the March 27, 2020 letter or by the time of the May 13, 2020 voluntary lapse of privileges. A.R. 139–40 (quoting NPDB Guidebook at E-37).

10

## V.    The Complaint

On November 4, 2024, Dr. Bhutta filed the Complaint in this case. Dr. Bhutta alleges six claims against HCGH and four claims against the NPDB in the following numbered counts: (1) a claim against HCGH for a violation of hospital bylaws; (2) a claim against HCGH for fraud or misrepresentation; (3) a claim against HCGH and the NPDB for defamation; (4) a claim against HCGH and the NPDB for civil conspiracy; (5) a claim against the NPDB for a violation of the APA based on arbitrary and capricious agency action; (6) a claim against HCGH for discrimination based on race, ethnicity, or national origin, in violation of Title VII and the MFEPA; and (7) a claim against HCGH and the NPDB for a violation of his constitutional right to due process of law. The Complaint further alleges that the adverse action report has caused Dr. Bhutta to suffer "reputational harm, loss of career opportunities, and emotional distress." Compl. ¶ 13. He seeks compensatory and punitive damages, declaratory relief, and injunctive relief requiring the NPDB to remove the adverse action report from its database.

## DISCUSSION

## I.    HCGH's Motion to Dismiss or, in the Alternative, for Summary Judgment

In its Motion, HCGH seeks dismissal of the six claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6) or summary judgment in its favor pursuant to Rule 56. Specifically, HCGH argues that (1) the claims are time-barred by the applicable statutes of limitations; (2) Dr. Bhutta has failed to allege sufficient facts to support plausible claims for relief; and (3) the submitted record demonstrates that summary judgment is warranted because HCGH is protected by statutory immunity. With the Motion, HCGH has filed a record consisting of the May 18, 2020 NPDB adverse action report; communications between Dr. Bhutta and HCGH officials from

11

December 2019 forward; the NPDB's letters to Dr. Bhutta during the dispute resolution process in 2023 and 2024; and OHRE's January 25, 2022 Decision and Order.

### A.     Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Generally, in evaluating a Rule 12(b)(6) motion, a court considers only the complaint and any attachments to it. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Courts are permitted, however, to consider a document attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Because the Complaint references and relies upon the May 18, 2020 NPDB adverse action report, that document, but not the others submitted by HCGH, is fairly deemed to be integral to the Complaint.

12

HCGH alternatively seeks summary judgment, which would allow for consideration of the submitted exhibits. Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement is satisfied by the title of HGCH's Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition" based on the present record. Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). In opposing HCGH's Motion, Dr. Bhutta has not submitted a Rule 56(d) affidavit or otherwise stated that he needs discovery in order to oppose the Motion for Summary Judgment. The Court therefore can and will treat the Motion as a Motion for Summary Judgment in relation to those arguments that require consideration of HCGH's exhibits.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in

13

the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

### B.   Statute of Limitations

In its Motion, HCGH asserts that Dr. Bhutta's claims are time-barred. As to state law claims over which the Court is exercising diversity or supplemental jurisdiction, the Court applies the choice-of-law rules of the state in which it sits, in this case, Maryland. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983). Maryland's choice-of-law rules provide that Maryland's procedural rules, including those relating to the statute of limitations, apply to all state law claims regardless of which state's substantive law applies. *Doughty v. Prettyman*, 148 A.2d 438, 440 (Md. 1959). On the issue of when a claim accrues for purposes of the statute of limitations, Maryland law applies the discovery rule, under which a limitations period begins to run when "the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981); *see Tate v. Am. Gen. Life Ins. Co.*, 627 F. Supp. 3d 480, 494 (D. Md. 2022).

In Count 1, Dr. Bhutta alleges that HCGH violated its bylaws by "failing to notify [him] of any adverse action or restriction on his privileges prior to the report to the NPDB" and by failing to provide him with "fair process and notification." Compl. ¶¶ 15–16. Although Dr. Bhutta does not specify in the Complaint the cause of action underlying this claim, construed liberally, and consistent with Dr. Bhutta's assertions in his brief on the Motion, Count 1 is fairly deemed to be a breach of contract claim. Under Maryland law, a breach of contract claim must be brought "within

14

three years from the date it accrues." Md. Code Ann., Cts. & Jud. Proc. § 5–101 (LexisNexis 2020); *see Shailendra Kumar, P.A. v. Dhanda*, 43 A.3d 1029, 1033–34 (Md. 2012). Here, the alleged breach of contract necessarily occurred when HCGH sent the adverse action report about Dr. Bhutta to the NPDB. Where the report in the NPDB database is dated May 18, 2020, the HCGH report had to have occurred on or before that date. Further, after multiple emails with Dr. Bhutta's attorney in which HCGH stated that it was required by law to send a report to the NPDB relating to Dr. Bhutta, HCGH sent a letter to Dr. Bhutta on May 8, 2020 in which it specifically stated that "as you have been advised previously, HCGH will report this adverse action to the Maryland Board of Physicians and the National Practitioner Data Bank, in accordance with applicable laws and regulations." HCGH Mot. Joint Record 22, ECF No. 38. Under these circumstances, Dr. Bhutta certainly knew or should have known of HCGH's report to the NPDB at or immediately after the time that it occurred. Where the Complaint was not filed until November 4, 2024, over four years later, the Court finds that Count 1 is barred by Maryland's statute of limitations.

This same reasoning applies to the claims against HCGH in Counts 2, 3, 4, and 7. In Count 2, Dr. Bhutta alleges that HCGH committed fraud or misrepresentation when it submitted its adverse action report to the NPDB "without the proper authority," that it "contained false or misleading information" about Dr. Bhutta, and that HCGH "knowingly allowed an unauthorized individual to submit the report." Compl. ¶¶ 17–18. Maryland's statute of limitations for fraud or misrepresentation claims is three years. *See* Md. Code Ann., Cts. & Jud. Proc. § 5–101; *James v. Weisheit*, 367 A.2d 482, 484–85 (Md. 1977). As discussed above, Dr. Bhutta knew or should have known of HGCH's filing of its adverse action report on or about May 18, 2020. Where HCGH provided Dr. Bhutta's counsel with the operative language in the adverse action report prior to its

15

filing, he knew or should have known of any false statements or misrepresentations in the report. Because the adverse action report also stated on its face that it was submitted by an official from the Medical Staff Administration, rather than the HCGH Board of Trustees, Dr. Bhutta also knew or should have known of the basis for his claim that an unauthorized individual submitted the report. Accordingly, where Dr. Bhutta's Complaint was filed over four years after the issuance of the May 18, 2020 adverse action report, Count 2 is also time-barred.

In Count 3, Dr. Bhutta alleges a claim of defamation against HCGH because the adverse action report "contains false statements that have caused damage to [his] reputation and professional standing." Compl. ¶ 20. Maryland's statute of limitations for defamation claims is one year. *See* Md. Code Ann., Cts. & Jud. Proc. § 5–105. As with the fraud claim, Dr. Bhutta knew or should have known of the adverse action report and any false statements on or about its filing date of May 18, 2020. Accordingly, Count 3 is also time-barred.

In Count 4, Dr. Bhutta alleges that HCGH is liable for civil conspiracy because it "acted in concert" with the NPDB "to publish false information about [him], intending to harm his reputation." Compl. ¶ 22. The civil conspiracy claim is subject to the same statutes of limitations as the alleged underlying torts: one year for defamation and three years for fraud or misrepresentation. *See Prince George's Cnty. v. Longtin*, 19 A.3d 859, 877 (Md. 2011). Where the Court has already determined that Counts 2 and 3 are time-barred, Count 4 is necessarily time-barred as well.

In Count 7, Dr. Bhutta alleges that HCGH violated his constitutional right to due process when it filed the adverse action report without providing him with "adequate notice or an opportunity to respond," and that its "improper handling of the reappointment and reporting process" deprived him of "a fair and lawful procedure." Compl. ¶¶ 28–29. In his memorandum

16

in opposition to HCGH's Motion, Dr. Bhutta clarifies that he is alleging a deprivation of due process pursuant to 42 U.S.C. § 1983. For § 1983 actions, "courts borrow the statute of limitations from the most analogous state-law cause of action," which is the "personal-injury suit." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 388 (4th Cir. 2014). Because the Maryland statute of limitations for such suits is three years, the § 1983 due process claim is subject to a three-year limitations period. *See id.* (citing Md. Code Ann., Cts. & Jud. Proc. § 5–101). Where federal law governs when the statute of limitations begins to run for § 1983 suits, such a cause of action accrues when "the plaintiff knows or has reason to know of his injury." *Id.* at 389. As discussed above, Dr. Bhutta knew or had reason to know of the filing of the adverse action report on or about May 18, 2020. In turn, he necessarily knew or had reason to know of what process, or lack of process, had been afforded by HCGH prior to that filing. Accordingly, the § 1983 claim, filed over four years later, is also time-barred.

Although Dr. Bhutta filed a memorandum in opposition to the Motion, he has not disputed that Counts 1–4 and 7 are time-barred. While a statute of limitations is subject to equitable tolling, Dr. Bhutta makes no argument in relation to that issue except in relation to Count 6, which is addressed below separately. Even construing that argument as relevant to Counts 1–4 and 7, the Court finds no basis for equitable tolling.

The United States Court of Appeals for the Fourth Circuit has described equitable tolling as "a discretionary doctrine that turns on the facts and circumstances of a particular case [and] does not lend itself to bright-line rules." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (quoting *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999)). "[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Id.*

17

Generally, equitable tolling is available when (1) "the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant," or (2) "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014) (quoting *Harris*, 209 F.3d at 330).

As to equitable tolling, Dr. Bhutta asserts, without providing further detail, that his failure to file timely claims should be excused because HCGH engaged in "misleading conduct," made "ongoing misrepresentations," and placed "procedural obstacles" in his way. Opp'n HCGH Mot. at 13, ECF No. 31. To the extent that HCGH may have engaged with Dr. Bhutta after the adverse action report was submitted, without more, such engagement does not provide a basis to conclude that equitable tolling is warranted in relation to these claims.

Finally, HCGH also asserts that the Title VII employment discrimination claim in Count 6 is time-barred because the Complaint was filed more than 300 days after the alleged acts of discrimination. Before filing suit under Title VII, a plaintiff must first file a charge of discrimination with the EEOC or a "State or local agency with authority to grant or seek relief" from the discriminatory practice. 42 U.S.C. § 2000e–5(e)(1). In a state such as Maryland, which has a state or local agency with such authority that has agreed to have the EEOC process charges of discrimination that would otherwise fall within its jurisdiction, the charge of discrimination must be submitted within 300 days of the act constituting the unlawful employment practice. *Id.*; *EEOC v. R&R Ventures*, 244 F.3d 334, 338 n* (4th Cir. 2001); *EEOC v. Techalloy Md., Inc.*, 894 F.2d 676, 678 (4th Cir. 1990). Accordingly, a plaintiff cannot recover "for discrete acts of discrimination or retaliation" that occurred outside of the 300-day limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *see also Hammoud v. Jimmy's Seafood, Inc.*, 618 F. Supp. 3d 219, 229 (D. Md. 2022) ("Plaintiffs bringing Title VII claims in Maryland

18

are subject to a 300-day statute of limitations."). Here, Dr. Bhutta filed his complaint with the EEOC on August 27, 2020, which is approximately 100 days after HCGH's transmission of the adverse action report on May 18, 2020. His EEOC complaint therefore satisfied the 300-day requirement. Where HCGH makes no other statute-of-limitations argument relating to Count 6, the Court does not find that Count 6 is time-barred.

Because Counts 1–4 and 7 are time-barred, the Court will grant summary judgment in favor of HCGH on these claims and thus need not and does not address HCGH's remaining arguments for dismissal or summary judgment in relation to those claims.

### C.    Employment Discrimination

In Count 6, Dr. Bhutta alleges claims of employment discrimination under Title VII and the MFEPA based on the assertion that HCGH's adverse action report was "motivated by discriminatory intent based on race, ethnicity, or national origin." Compl. ¶ 26. Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Because the MFEPA is the state law counterpart to Title VII and courts typically apply Title VII analysis to MFEPA claims, the Court will address the Title VII and MFEPA claims together under the federal standards. *See Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 788 (D. Md. 2013) (citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 743 n.8 (Md. 2007)).

To state a Title VII discrimination claim, a plaintiff may demonstrate through direct or circumstantial evidence that race, ethnicity, or national origin "motivated the employer's adverse employment decision." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir.

19

2004) (en banc).    Alternatively, a plaintiff may proceed through the approach adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), "under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.  To state a *prima facie* claim of discrimination based on disparate treatment, a plaintiff must present facts demonstrating:  (1) membership in a protected class; (2) satisfactory job performance; (3) that the plaintiff was subjected to an adverse employment action; and (4) that similarly situated employees outside the protected class received more favorable treatment under similar circumstances. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).  On a motion to dismiss, a plaintiff need not necessarily establish a *prima facie* case of discrimination, but "the complaint's factual allegations must allow a 'court to draw the reasonable inference that the defendant is liable'" for discrimination. *McCleary-Evans v. Md. Dep't of Transp., State Hwy. Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Here, Dr. Bhutta has not alleged that he was a member of any protected class.  Even if that fact could be inferred from the Complaint, and even assuming that Dr. Bhutta was an employee of HCGH and that the filing of the adverse action report can be deemed to be an adverse employment action in that it inflicted "some harm respecting an identifiable term or condition of employment," *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024), Dr. Bhutta's employment discrimination claims must be dismissed because he has not alleged any facts showing that similarly situated employees outside the protected class received more favorable treatment under similar circumstances. *See Coleman*, 626 F.3d at 190.

20

On this issue, the Complaint provides only the general allegation that Dr. Bhutta "was treated differently compared to similarly situated physicians." Compl. ¶ 27. Although a plaintiff need not identify a comparator whose circumstances are identical in all respects, Dr. Bhutta has not identified any HCGH physician of a different race or national origin, whether by name or otherwise, who had the same supervisor, had comparable job duties, was subject to the same standards, and engaged in similar conduct to Dr. Bhutta, but was not investigated or subjected to an NPDB report under similar circumstances. *See Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 420 (D. Md. 2015) (listing relevant factors to establish a similarly situated comparator). More broadly, Dr. Bhutta has not otherwise alleged direct or circumstantial evidence supporting an inference of discrimination in relation to the adverse action report or other treatment by HCGH. The Court will therefore dismiss Count 6 for failure to state a claim.

## II.    NPDB's Motion to Dismiss

In its Motion to Dismiss, the NPDB seeks the dismissal of Dr. Bhutta's defamation, civil conspiracy, and due process claims against it on the grounds that (1) pursuant to Federal Rule of Civil Procedure Rule 12(b)(1), the Court lacks subject matter jurisdiction because the United States has not waived its sovereign immunity to such claims; and (2) pursuant to Rule 12(b)(6), the claims are time-barred and, in the alternative, the Complaint fails to state sufficient factual allegations to support plausible claims for relief.

### A.    Defamation and Civil Conspiracy

As to the defamation claim in Count 3 in which Dr. Bhutta alleges that the NPDB "failed to correct or remove" the adverse action report, which "contains false statements that have caused damages to [his] reputation and professional standing," Compl. ¶¶ 20–21, the NPDB asserts that this claim must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction

21

because the NPDB is a federal agency, and the federal government has not waived sovereign immunity for such claims.

Pursuant to Rule 12(b)(1), it is the plaintiff's burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). Rule 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to make that showing. When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192.

Generally, the United States may not be sued absent a waiver of sovereign immunity, and the Federal Tort Claims Act's general waiver of sovereign immunity for tort claims seeking money damages excludes defamation claims. *See* 28 U.S.C. § 2680(h); *Talbert v. United States*, 932 F.2d 1064, 1066–67 (4th Cir. 1991). Thus, Dr. Bhutta's defamation claim against the NPDB is subject to dismissal.

In opposing the Motion, Dr. Bhutta does not contest this conclusion but instead asserts that he is not seeking damages on his defamation claim, that his "reference to defamation arises as factual context for his APA claim and his due process claim," and that sovereign immunity does not bar APA or constitutional claims seeking only injunctive or declaratory relief. Opp'n NPDB Mot. Dismiss at 5, ECF No. 33. Where Dr. Bhutta has effectively disavowed any freestanding

22

defamation claim against the NPDB, and in any event the cited principle relating to APA and constitutional claims does not apply to a defamation claim, which is a common law tort claim, Dr. Bhutta has provided no basis to preclude dismissal of the defamation claim.

As for the civil conspiracy claim in Count 4, Dr. Bhutta alleges that the NPDB engaged in a civil conspiracy when it "acted in concert" with HCGH to "publish false information about [him], intending to harm his reputation" and when it engaged in a "coordinated effort to maintain a false report." Compl. ¶¶ 22–23. Thus, the civil conspiracy alleged in Count 4 is one to engage in defamation. Under Maryland law, civil conspiracy "is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1044–45 (Md. 1995) (quoting *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 265 n.8 (Md. 1994)). Where the NPDB cannot be held liable for defamation, it cannot be held liable for civil conspiracy to commit defamation. Count 4 will be dismissed as to the NPDB.

### B.    Due Process

In Count 7, Dr. Bhutta alleges that the NPDB deprived him of due process "by taking adverse action without providing adequate notice or an opportunity to respond," and through the "improper handling of the . . . reporting process." Compl. ¶¶ 28–29. The NPDB seeks dismissal of this claim on the grounds that (1) it is barred by sovereign immunity; (2) it is time-barred; and (3) it fails to state a plausible claim for relief.

As to sovereign immunity, Dr. Bhutta has clarified in his memorandum in opposition to the NPDB's Motion to Dismiss that he is not seeking damages on his due process claim and instead is seeking injunctive and declaratory relief. Sovereign immunity does not necessarily apply when a plaintiff asserts a due process claim against a federal agency seeking only injunctive and

declaratory relief, because the "APA provides . . . a waiver of sovereign immunity in suits against federal agencies seeking equitable relief." *See Strickland v. United States*, 32 F.4th 311, 366 (4th Cir. 2022) (citing 5 U.S.C. § 702); *see also Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 185–86 (D.C. Cir. 2006) (holding that the APA waives federal sovereign immunity for claims against federal agencies for nonmonetary relief, regardless of whether those claims are brought under the APA). The Court will therefore not dismiss the due process claim against the NPDB based on sovereign immunity.

The NPDB also argues that Dr. Bhutta's due process claim is time-barred based on the three-year Maryland statute of limitations for civil claims. Although that limitations period is applicable to constitutional claims asserted against a state government official under § 1983, *see supra* part I.B, it does not apply to constitutional claims asserted against the federal government. A Fifth Amendment due process claim against a federal agency is governed by the general federal statute of limitations for civil cases, which provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a); *see United States v. Minor*, 228 F.3d 352, 356, 359 (4th Cir. 2000) (stating that the six-year statute of limitations applies to a Fifth Amendment due process claim against a federal agency). Because six years have not yet passed since Dr. Bhutta's due process claim accrued in May 2020, the claim is not time-barred.

Nevertheless, the Court agrees with the NPDB that, pursuant to Rule 12(b)(6), the Complaint does not provide sufficient facts to state a due process claim. To state a Fifth Amendment due process claim, a plaintiff must allege a deprivation of a constitutionally protected interest in life, liberty, or property, and that the procedural protections received did not meet "the minimum measure of procedural protection warranted under the circumstances." *Strickland*, 32

F.4th at 347. Courts have rejected procedural due process claims based on the NPDB's acceptance, retention, or publication of an adverse action report on the grounds that such actions did not constitute deprivations of constitutionally protected interests. *See, e.g.*, *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (stating that the Army's submission of an adverse action report to the NPDB did not deny a physician her "right to practice her profession free from an imposed stigma" because such a harm to reputation, even if causing hardship in obtaining employment, "does not rise to the level of a constitutional deprivation"); *Rochling v. Dep't of Veterans Affairs*, 725 F.3d 927, 931–32 (8th Cir. 2013) (in dismissing a procedural due process claim based on the submission of an adverse action report to the NPDB, concluding that the submission did not deprive a physician of a constitutionally protected property interest in a "clean" medical license because the "official purpose of the report is to disclose information, not to reprimand" the physician, and because the "report is not available to the general public"); *Doe v. Rogers*, 139 F. Supp. 3d 120, 164 (D.D.C. 2015) (concluding that the NPDB's "collection, retention and disclosure" of adverse action reports did not deprive a physician of a constitutionally protected liberty and property interest in "the right to practice one's chosen profession," because any harm to that interest was caused not by federal action but by the responses of "private, third-party hospitals" to the reports); *Robinson v. E. Carolina Univ.*, 329 F. Supp. 3d 156, 179–80 (E.D.N.C. 2018) (concluding that a medical fellow failed to state a due process claim against a medical school's risk management director, whose actions led to the submission of an adverse action report to the NPDB, because the fellow did not allege that her license had been revoked or suspended or that she was unable to practice medicine as a result of the report).

Thus, Dr. Bhutta has not alleged facts supporting the conclusion that the NPDB deprived him of a recognized constitutionally protected liberty or property interest by retaining the adverse

action report in its database. *See, e.g.*, *Randall*, 30 F.3d at 522; *Rochling*, 725 F.3d at 932. Moreover, he has not identified what procedures should have been followed that were not followed, the basis for those procedural requirements, and how the failure to follow such requirements violated due process. Dr. Bhutta's due process claim against the NPDB will therefore be dismissed on this basis.

### III.   NPDB's Partial Motion for Summary Judgment

In Count 5, Dr. Bhutta alleges that the NPDB's "decision to retain a report that was not submitted by an authorized entity was arbitrary, capricious, and in violation of federal law" under the APA, and that the NPDB "failed to adhere to the required protocols for adverse [action] reporting." Compl. ¶¶ 24–25. Specifically, Dr. Bhutta argues that because the report was submitted by the Director of the HCGH Medical Staff Office and not by the Board of Trustees, in violation of HCGH's bylaws, the NPDB's retention of the report despite this irregularity violated the law. In its Partial Motion for Summary Judgment, the NPDB seeks summary judgment on this APA claim.

#### A.   Legal Standard

As relevant to Dr. Bhutta's APA claim, a court must "set aside" a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although the NPDB has stylized its Motion as one for summary judgment, for an APA claim, a court does not apply the Rule 56 standard and instead must "engage in a substantive review of the record" to determine whether "the agency acted arbitrarily or capriciously." *City of Columbus v. Cochran*, 523 F. Supp. 3d 731, 742–43 (D. Md. 2021) (citations omitted).

When faced with an arbitrary-and-capricious challenge, "an agency 'must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection

26

between the facts found and the choice made.'" *CASA de Maryland v. Dep't of Homeland Security*, 924 F.3d 684, 703 (4th Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Arbitrary-and-capricious review is "highly deferential, with a presumption in favor of finding the agency action valid," but does not "reduce judicial review to a rubber stamp of agency action." *Id.* (quoting *Friends of Back Bay v. U.S. Army Corps of Eng'rs*, 681 F.3d 581, 587 (4th Cir. 2012)). A court must conduct a "searching and careful inquiry" of the record so that it "may consider whether the agency considered the relevant factors and whether a clear error of judgment was made." *Id.* (quoting *Friends of Back Bay*, 681 F.3d at 587). An agency rule or action will be deemed arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

When adjudicating an APA claim, a court must "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam). With the Motion, the NPDB has submitted the administrative record, which includes the May 18, 2020 adverse action report; the documents submitted to the NPDB by Dr. Bhutta and HCGH during that process, as well as related communications between Dr. Bhutta and HCGH officials from December 2019 forward; and the communications between Dr. Bhutta and the NPDB during the dispute resolution process in 2023 and 2024.

**B.    APA Claim**

In his APA claim, Dr. Bhutta challenges the NPDB's decision, consistent with the Dispute Resolution Decision, to retain the adverse action report. In arguing that the NPDB acted arbitrarily,

capriciously, and contrary to law, Dr. Bhutta primarily argues that it was improper for the NPDB to retain the adverse action report in its database where, as he alleges, HCGH violated its bylaws by having the Director of the Medical Staff Office, rather than the Board of Trustees, submit the report to the NPDB. However, nothing in the HCQIA or its implementing regulations requires the NPDB to reject or remove an adverse action report because its submission did not follow procedures in the health care entity's bylaws.

Dr. Bhutta asserts that the NPDB must reject or remove such reports because the regulations governing dispute resolution require a determination of whether the information submitted to it is "reportable."   45 C.F.R. § 60.21(c)(2).   According to Dr. Bhutta, this responsibility "necessarily includes confirming that the report complies with the statutory prerequisites—such as whether the action was taken by the proper hospital authority as mandated by the hospital's bylaws." Opp'n NPDB Mot. Summ. J. at 3, ECF No. 58. The HCQIA defines the circumstances under which a health care entity must engage in "[r]eporting," which includes when the entity "accepts the surrender of clinical privileges of a physician . . . while the physician is under an investigation."  42 U.S.C. § 11133(a)(1). Neither the statute nor the regulations include any provision stating that the NPDB may accept a report only if it is submitted by an official empowered by the healthcare entity's bylaws to make such a report.   Here, where the administrative record demonstrates that Dr. Bhutta allowed his privileges to lapse while he was under investigation, this action was reportable under 42 U.S.C. § 11133(a) and 45 C.F.R. § 60.12.

Dr. Bhutta also argues that in rejecting his challenge to the adverse action report, the NPDB improperly relied upon a provision in the NPDB Guidebook stating that the NPDB "does not examine how a reporting entity uses its bylaws, how practitioners are disciplined, or how practitioners are afforded due process." A.R. 126 (citing NPDB Guidebook at F-5). Dr. Bhutta

28

argues that the reliance on this Guidebook provision was unlawful because the NPDB "cannot refuse to consider whether a report was lawfully authorized by the reporting entity." Opp'n NPDB Mot. Summ. J. at 7. To the contrary, the Guidebook's limitations on the scope of the dispute resolution process are consistent with the HCQIA and its implementing regulations, as nothing in the statute requires the NPDB to examine such questions, and the regulations specifically limit the NPDB's scope of review by providing that the NPDB "will only review the accuracy of the reported information, and will not consider the merits or appropriateness of the action or the due process that the subject received." 45 C.F.R. § 60.21(c)(1). Where neither the statute nor the regulations require the NPDB to consider compliance with hospital bylaws, its decision not to do so, and its application of the NPDB Guidebook provision, was not arbitrary, capricious, or contrary to law.

Finally, Dr. Bhutta also appears to challenge the accuracy of the adverse action report by asserting that his privileges had already expired before he resigned, and that he was not under investigation when he resigned. HRSA reviewed the accuracy of the adverse action report and found that when Dr. Bhutta emailed HCGH on May 13, 2020 to state that he would let his privileges expire, the "investigation was still ongoing because HCGH had not made a final decision" as to Dr. Bhutta's FPPE plan and restrictions on his privileges. A.R. 126. In HRSA's subsequent reconsideration of Dr. Bhutta's claim, it again concluded that Dr. Bhutta was under investigation at the time he let his privileges expire because the investigation began when he was placed on an FPPE plan before December 19, 2020 and had not ended by May 13, 2020, when he stated that he would allow his privileges to lapse.

Contrary to Dr. Bhutta's claim, the administrative record supports the finding that Dr. Bhutta allowed his privileges to lapse while the investigation was still ongoing, such that the

adverse action report is accurate. First, the Court finds that the NPDB definition of the term "investigation" that was applied by HRSA, under which an investigation is considered to start when "the health care entity begins an inquiry and does not end until the health care entity's decision-making authority takes a final action or makes a decision to not further pursue the matter," is a reasonable one. *See* NPDB Guidebook at E-36 to E-37; *Doe*, 139 F. Supp. 3d at 138 (finding that where a hospital had "embarked on a systematic examination" of the physician's "conduct relating to [a] surgical incident," including by "gathering the necessary documentation," the "investigation" had begun); *Doe v. Leavitt*, 552 F.3d 75, 86 (1st Cir. 2009) (in considering a similar challenge by a physician to the NPDB's interpretation of the term "investigation," upholding the agency's interpretation that an "investigation" does not end until "a health care entity's decisionmaking authority either takes a final action or formally closes the investigation"). Because this definition is consistent with the text and purpose of the HCQIA, which seeks to ensure that physicians cannot avoid adverse action reports by resigning before investigations have concluded, the Court finds that the NPDB correctly interpreted this term.

Second, the Court finds that the NPDB's conclusion that the investigation remained ongoing at the time that Dr. Bhutta's privileges lapsed is supported by substantial evidence throughout the administrative record. Documents submitted to the NPDB by Dr. Bhutta and HCGH show that in December 2019, Dr. Bhutta was referred to the HCGH Leadership Council based on complaints about his performance, and that after it reviewed the available information, it proposed to place him on an FPPE plan, which necessarily demonstrates that the investigation had begun by that time. Although Dr. Bhutta claims that HCGH's investigation ended when the Board of Trustees sent him a one-month reappointment letter on March 27, 2020 that did not mention restrictions on his privileges, or that the investigation ended when his reappointment expired after

30

April 30, 2020, the record does not support these conclusions. An April 15, 2020 email from HCGH's counsel to Dr. Bhutta's counsel, which discussed the possibility of another reappointment if Dr. Bhutta accepted the FPPE plan, shows that HCGH did not consider the March 27, 2020 letter to have ended the investigation, regardless of the letter's silence on restrictions. Furthermore, a letter from Snelgrove dated May 8, 2020 and emailed to Dr. Bhutta on May 11, 2020 stated that that the Medical Executive Committee's "recommendation will now be forwarded to the HCGH Board of Trustees for consideration and final action" even while discussing the terms of a possible reappointment, which establishes that no final action had been taken as of that date, such that the investigation remained ongoing after April 30, 2020. A.R. 100. Finally, where there is no record that the Board of Trustees took any such final action before Dr. Bhutta's May 13, 2020 email, and where that email demonstrates that Dr. Bhutta affirmatively allowed his privileges to lapse even while discussions about another potential reappointment were ongoing, the Court finds that the NPDB's conclusion that Dr. Bhutta was still under investigation at the time that he allowed his privileges to lapse was not arbitrary or capricious.

Because the NPDB lawfully declined to examine whether HCGH complied with its bylaws when it accepted and retained the adverse action report, and because the NPDB correctly concluded that the information contained in that report was accurate and reportable, the Court finds that the NPDB's decision to retain the report was not arbitrary, capricious, or contrary to law. The NPDB's Partial Motion for Summary Judgment will therefore be granted.

31

## CONCLUSION

For the foregoing reasons, HCGH's Motion to Dismiss or, in the Alternative, for Summary Judgment will be GRANTED; the NPDB's Motion to Dismiss will be GRANTED; and the NPDB's Partial Motion for Summary Judgment will be GRANTED.  A separate Order shall issue.

Date:  December 18, 2025

THEODORE D. CHUANG
United States District Judge